Robert **BORCHERS** and **Thwaites Inn, Inc.,** Plaintiffs,

v.

**COMMERCIAL UNION ASSURANCE CO., La Reunion Francaise Societe Anonyme D'Assurances Et De Reassurances, the Yorkshire Insurance Company Limited, Bishopgate Insurance Limited, Northern Assurance Co. Ltd., Excess Insurance Company, Ltd., London and Hull Maritime Insurance Company Limited, the Ocean Marine Insurance Company Limited, Prudential Assurance Company, Ltd., English & American Insurance Co. Ltd., the Threadneedle Insurance Co. Ltd., Generali, Assicurazioni Generali, S.P.A., Sirius (U.K.) Insurance PLC, Sphere Drade Insurance PLC., and Phoenix Assurance Public Limited Co.,** Defendants.

No. 92 Civ. 9212 (DLC).

United States District Court, S.D. New York.

Jan. 27, 1995.

Martin Kleinman, Weg & Myers, P.C., New York City, for plaintiffs.

Debra A. Tama, Francis P. Manchisi, Frederick W. Reif, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants.

Andrea Moss, Paul A. Crotty, Corp. Counsel of the City of New York, New York City, for Non–Party Witness Fire Marshall Lynn.

### MEMORANDUM OPINION AND ORDER

COTE, District Judge:

Plaintiffs in this action have moved pursuant to Rule 45(e), Fed.R.Civ.P.,[1] to hold

---

**1.** Rule 45(e) provides, in pertinent part, that

"Failure by any person without adequate excuse to obey a subpoena served upon that

Fire Marshall David Lynn of the Fire Department of the City of New York ("F.D.N.Y.") in contempt of court. Fire Marshall Lynn refused to comply with a subpoena for production of investigative reports and testimony pertaining to a criminal investigation by the F.D.N.Y. into plaintiff Robert Borchers' alleged participation in a fire which destroyed plaintiffs' property, Thwaites Inn. Oral argument was held on December 9, 1994, after which the Court reviewed the withheld documents *in camera*. For the reasons given below, and with the exceptions noted below, plaintiffs' motion is denied.

## BACKGROUND

This is an action in which the plaintiffs seek to recover the proceeds of an insurance policy, issued by defendants, following a fire at Thwaites Inn, located in City Island, Bronx, New York, on February 17, 1992. The defendant insurers have refused to pay on the ground, *inter alia*, that the fire was deliberately set, or caused to be set, by the Inn's owner, Borchers.

Fire Marshall Lynn, employed by the F.D.N.Y.'s Bureau of Fire Investigation ("B.F.I."), is the principal investigator of this fire. Prior to mid-March 1992, he shared information about his investigation with the defendants, apparently including his view that Borchers was responsible for the fire. After mid-March 1992, he ceased sharing such information with the defendants. Fire Marshall Lynn was subpoenaed by plaintiffs for an examination before trial and production of the investigative reports relating to this fire, by subpoenas dated June 24, 1993, and September 20, 1993. After several adjournments, Fire Marshall Lynn appeared on September 27, 1994, to be examined and produce documents. Either at the appearance or subsequent to it, Fire Marshall Lynn produced some of the documentation requested by plaintiffs, including most of the investigative file created prior to mid-March

1992, but asserted that other information and documents requested by plaintiffs were protected by a qualified law enforcement privilege due to the existence of an open investigation into the fire.[2]

Fire Marshall Lynn has provided two logs of the documents he asserts are privileged. The first such log is dated October 21, 1994, and includes: 1) personal notebook entries of Fire Marshall Lynn dated February 25 and May 14, 1992; 2) official reports generated between August 24, 1993 and May 15, 1994; 3) an audiotape created on August 24, 1993; 4) six subpoenas issued by the Bureau of Fire Investigation between March 24 and September 27, 1993; and 5) various pages in Case Logs, created between March of 1992 and October of 1994. The second log is dated January 23, 1995, and lists allegedly privileged documents generated after October 21, 1995, including: 1) official reports generated on October 21, 1994 and December 6, 1994; and 2) miscellaneous case log pages, dated October 21, 1994, through December 6, 1994.

## *IN CAMERA* INSPECTION

Plaintiffs requested that the Court examine the documents *in camera*, and counsel for the F.D.N.Y. did not object. The United States Supreme Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection. *U.S. v. Zolin*, 491 U.S. 554, 569, 109 S.Ct. 2619, 2629, 105 L.Ed.2d 469 (1989). Although the decision of whether to engage in *in camera* review rests in the sound discretion of the district court, *Estate of Fisher v. C.I.R.*, 905 F.2d 645, 651 (2d Cir.1990), *in camera* review is particularly encouraged in cases invoking governmental claims of privilege. *See, e.g., Kerr v. United States District Court*, 426 U.S. 394, 406, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976) (suggesting *in camera* review is a "highly appropriate and useful means of dealing with claims of governmental

person may be deemed a contempt of court from which the subpoena issued."

**2.** With one exception, all of the documents over which Fire Marshal Lynn asserts a privilege were created after mid-March of 1992, when the B.F.I. ceased its communications with defendants' investigator, Mr. Thomas Russo. The one exception to this is a notebook entry from February of 1992, which concerns the identity of a confidential informant.

privilege"); *United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974) °(*in camera* review of documents sought by special prosecutor appropriate in light of claim of presidential privilege). The Court has granted the request for an *in camera* review, and this Opinion is based on that inspection.

## THE LAW ENFORCEMENT PRIVILEGE

The Second Circuit Court of Appeals has recognized a law enforcement privilege, the purpose of which is to

prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

·*In re Dept. of Investigation of City of New York,* 856 F.2d 481, 484 (2d Cir.1988) (citations omitted). Because the privilege is "qualified," however, it must be balanced against a litigant's substantial need for information. *U.S. v. Davis,* 131 F.R.D. 391, 395 (S.D.N.Y.1990); *see also Raphael v. Aetna Cas. and Sur. Co.,* 744 F.Supp. 71 (S.D.N.Y. 1990).

Plaintiffs recognize the existence of a qualified law enforcement privilege but argue that the F.D.N.Y. investigation must be over since it has not yet resulted in an arrest for a 1992 fire that the F.D.N.Y. promptly concluded was the result of arson. The November 16, 1994 affidavit of Fire Marshall Lynn indicates that the investigation of the Thwaites Inn fire is "an open investigation", that a witness was interviewed as recently as October 21, 1994, and that, in his opinion, based on his twelve years of work with the F.D.N.Y., it is not unusual for an arson investigation to remain open for two or three years after the fire. The *in camera* review of the withheld documents confirms that the investigation is ongoing. · Even if the investigation were closed, however, the plaintiffs would not necessarily be entitled to review the files of a criminal investigation, including one concerning their own activities.

The F.D.N.Y. represents, and the Court's review confirms, that the notebook entries, official reports, and case log entries reflect the scope of the criminal investigation, as well as the identity and substantive testimony of various witnesses interviewed by Fire Marshall Lynn in the course of his investigation. According to Fire Marshall Lynn, the "B.F.I. ordinarily promises informants that the informant's identity will not be disclosed and statements made to the B.F.I. will be kept confidential and will not be made public." Plaintiffs argue that, even if the names of these informants are privileged, they should be entitled to discover the content of these interviews. Informants, however, can be identified not only by their names, but by what they say. Even witnesses whose identity is not confidential may want the substance of their testimony to remain so. Revealing the substance of these interviews to plaintiffs could jeopardize the investigation and, given that this is an investigation of a violent crime, perhaps the witnesses themselves.

Finally, disclosure of informants' statements may interfere with the ability of the F.D.N.Y. to secure the cooperation of other informants in future investigations. The importance of confidentiality to any informant who has assisted the F.D.N.Y. does not disappear with the closure of an investigation. If that were true, then the promise of confidentiality would be so severely circumscribed and temporary as to be quite hollow. In any event, plaintiffs' counsel has indicated that many of the supposed informants are known to the plaintiffs. In that case, plaintiffs had ample opportunity during the discovery phase of this lawsuit to take their depositions.

A final consideration weighing against disclosure is the possibility that plaintiffs seek to use this civil action to circumvent the criminal discovery process. Should Borchers ever be faced with criminal charges, then disclosure of the file's contents will be governed by the applicable criminal discovery rules and law.

The only item not produced to the Court for *in camera* inspection is an audiotape which is referred to in the F.D.N.Y. motion papers. Given the rulings regarding the oth-

er withheld material discussed in this Opinion, I will require neither that the audiotape be produced for inspection, nor that it be produced to plaintiffs' counsel.

## PLAINTIFFS' NEED FOR THE DOCUMENTS

Plaintiffs have not made a compelling showing of substantial need for the investigatory files. Plaintiffs' principal argument is their fear that they will be "unfairly surprised" at trial, and that an "open" investigation and "uncharged allegations of criminality" may have a prejudicial effect on the jury. These potential problems, however, are better addressed by limiting the use which all parties can make of the criminal investigation at trial, rather than jeopardizing the investigation by allowing discovery of these materials.

Plaintiffs' assertion that the evidence in these reports may be "potentially exculpatory" is based solely on the fact that no arrest has yet occurred in connection with the fire. This assertion is not a necessary or valid inference and does not, by itself, constitute a demonstration of substantial need.

## CONCLUSION

Plaintiffs' motion to hold Fire Marshall Lynn in contempt of court for failure to obey a subpoena is denied.

SO ORDERED: