Stephen MORRISSEY, and Donna Morrissey, Plaintiffs,

v.

The CITY OF NEW YORK, New York County District Attorney's Office, Robert M. Morganthau in his official capacity as District Attorney of New York County, William Burmeister, in his official capacity as Assistant District Attorney, The New York City Police Department, William J. Bratton, in his official capacity as Commissioner of the New York City Police Department, Walter J. Mack, in his official position as Chief of the Internal Affairs Bureau of the New York City Police Department, Jorge Alvarez, individually and in his official capacity as a police officer of the New York City Police Department, Defendants.

No. 95 Civ. 1374(CBM).

United States District Court, S.D. New York.

March 6, 1997.

Michael F. Fitzgerald, New York City, for Stephen Morrissey.

Dona B.Morris, Paul A. Crotty, Corp. Counsel of the City of N.Y., New York City, for New York City, New York City Police Dept., William J. Bratton, Walter J. Mack.

Marc Frazier Scholl, N.Y. County Dist. Atty's Office, New York City, for N.Y. County Dist. Atty's Office.

## OPINION

MOTLEY, District Judge.

Plaintiff seeks the production of documents which have been withheld or redacted by defendants on the basis of a variety of privileges. For the reasons stated herein, this motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Stephen Morrissey is a police officer who was in the New York Police Department's ("NYPD") 30th precinct during the investigation into its corrupt practices. During these investigations, defendant New York District Attorney's Office ("District Attorney") in conjunction with the Internal Affairs Bureau ("IAB") of defendant NYPD, would identify members of the police force who had been guilty of wrongdoing, arrest them and offer them what was known as a "cooperation agreement." Under the terms of the agreement, the officers would aid in the prosecution of other members of the NYPD by agreeing to become "cooperators," in return for which they would have their ultimate punishments reduced. As cooperators, the officers were required to wear tape recording devices and gather evidence of wrongdoing by other members of the precinct. In addition, the cooperators were expected to testify against officers against whom they had gathered information.

Defendant Jorge Alvarez, against whom a default judgment has been rendered in this case,[1] was a police officer in the 30th precinct who had been under investigation for corruption, but who, at some point in 1993, became a cooperator. On February 27, 1994, while at the police station, defendant Alvarez shot plaintiff in the left foot after a scuffle between plaintiff and defendant Alvarez during which plaintiff had referred to defendant Alvarez as a "rat," allegedly a term of derision referring to defendant Alvarez' position as a cooperator.

Plaintiff alleges that defendant Alvarez deprived him of his Fourth and Fifth Amendment rights in violation of 42 U.S.C. § 1983 by shooting him. Plaintiff also claims that defendants City of New York, NYPD, the District Attorney, and the individuals in charge of these agencies, acting in their official capacities, have engaged in a policy of recklessly disregarding the rights of persons like plaintiff by failing to adequately train and supervise cooperators from the 30th precinct. Plaintiff also raises a litany of state law claims and seeks $1,000,000 in compensatory damages, $1,000,000 in punitive damages, and attorney's fees. The instant matter before the court is the resolution of a discovery dispute which has arisen between the parties.

The documents in dispute, which have been submitted to the court for in camera review, can be divided into several categories. First, there are IAB files relating to the investigation of the 30th precinct and the shooting of plaintiff Morrissey. These documents, which are basically IAB investigative reports, have been largely produced to plain-

1. By order dated January 30, 1996, this court granted plaintiff judgment by default as against defendant Alvarez because he had failed to appear in this action. Defendant Alvarez later wrote to the court, requesting that the default judgment be vacated because he had been under the impression that defendant City of New York was going to represent him. Upon the consent of all parties, the default judgment was vacated by order dated November 13, 1996. However, defendant Alvarez did not appear after the lifting of the default judgment. As a result, upon request of plaintiff, the default judgment was reinstated against defendant Alvarez on January 2, 1997. Thus, defendant Alvarez is not a party to the instant dispute and, unless otherwise stated, any reference to "defendants" herein refers to all defendants but him.

tiff. However, three types of redactions have been made. First, the names of all officers and civilians who were not parties to this action have had their names redacted to protect the identity of cooperators while investigations were pending. Defendants have now represented that the investigations have been completed and that they will provide the names of former police officers who have been formally charged with wrongdoing growing out of the 30th precinct investigations, including those who acted as cooperators. However, defendant still seeks to redact the names of those police officers who have not been formally charged with wrongdoing as well as the names of civilians on the grounds that this material is not relevant and is privileged. Another subject of redactions in these documents has been the method by which the tape recording device used by defendants was placed on the cooperator's person. Defendants claim that this information is not relevant and is also covered by the law enforcement privilege. Finally, defendants have redacted certain parts of the files which deal with wrongdoing by officers, some of whom were cooperators, which has no direct relation to the shooting incident which resulted in plaintiff's injury. Defendants have not asserted a privilege for this information but rather claim that it is not relevant.

A second category of disputed documents are the pre-employment application materials and other personnel information of plaintiff Morrissey and defendant Alvarez. Most of this has been withheld, either on the grounds that the material is not relevant or that it is privileged information. Finally, there is a series of IAB reports on the status of investigations and related materials that were not produced until September of 1996 in heavily redacted form (the "September production"). Defendants argue that the redacted portion of the material is privileged and not relevant to plaintiff's case.

## DISCUSSION

Defendants have withheld information on the grounds of relevance as well as a variety of privilege claims. Each will be discussed in turn.

### I. Relevance

Some of the documents that defendants have produced have had portions redacted on the grounds that such information was not relevant to this case. Most such redactions occur in documents taken from the files of the IAB and relate to investigations of wrongdoing in the 30th precinct not directly related to the shooting of plaintiff by defendant. In addition, certain information contained in the personnel file of defendant Alvarez was redacted because it was not relevant. Finally, defendants have argued that the redacted portions of the September production are irrelevant as well.

In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be admissible. Fed.R.Civ.P. 26(b)(1); *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("The need to develop all relevant facts in the adversary system is both fundamental and comprehensive"); *Ishmail v. Cohen*, (S.D.N.Y.1986) (indicating that in § 1983 actions, federal policy favors the broad construction of the already liberal discovery rules).

In light of the breadth of permissible discovery in federal actions, all of the documents submitted to the court for in camera review are deemed relevant with the exception of a credit report contained in defendant Alvarez' file which could not possibly have any bearing on this case.

Complaints registered against defendant Alvarez with the Civilian Complaint Review Board are certainly relevant, whether unsubstantiated or not. The same is true regarding any other disciplinary charges relating to defendant Alvarez contained in the Central Personnel Index. Plaintiff's contention is that defendants have failed to adequately supervise defendant Alvarez and others like him. Clearly, prior disciplinary incidents are relevant to that issue and, while these reports may not themselves be admissible, they are certainly reasonably calculated to lead to the discovery of admissible evidence.

▮ The court finds that those sections of IAB investigative material which were redacted on the grounds of relevance as well as the material redacted from the September production are indeed relevant. Much of this information concerns wrongdoing by officers of the 30th precinct, some of whom later became cooperators for the District Attorney and the NYPD. The material is relevant to plaintiff's allegation that defendants had a policy or custom of permitting dangerous and violent individuals to continue bearing weapons and acting as police officers without supervising them adequately[2]. Of course, the mere fact that all of this material is relevant does not necessarily mean that it must be disclosed. Defendants also make a variety of privilege claims as to most of these documents, to which the court now directs its attention.

## II. Privilege

▮ Because there has been no codification of federal privilege law, the law of privilege as it relates to federal civil rights actions brought under 42 U.S.C. § 1983 against local law enforcement agencies is extremely muddled and confused. Various courts have addressed these matters using a wide variety of different privileges which existed to promote different policies and purposes. For example, some courts have attempted to adapt the "executive" or "deliberative process" privilege to these situations. *See, e.g., Burke v. New York City Police Department*, 115 F.R.D. 220 at 230–31 (S.D.N.Y.1987); *Segura v. City of Reno*, 116 F.R.D. 42 (D. Nevada 1987); *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973). Defendants would have

this court do the same. However, it is clear that the purpose of this privilege is to protect the executive branch in its formulation of government policy by shielding from disclosure intra-agency memoranda which reflect recommendations and deliberations about government policies. *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); *Hopkins v. U.S. Dept. Of Housing & Urban Development*, 929 F.2d 81, 84 (2d Cir.1991). This principle cannot be extended to the decisions made by local law enforcement units without seriously thwarting the very purpose for which the privilege was created. Such decisions are simply not the type of important public policies whose creation the privilege was designed to protect[3]. *See Kelly v. San Jose*, 114 F.R.D. 653, 657 (N.D.Cal.1987). Other courts have examined the propriety of disclosure of police information under the constitutionally protected right to privacy. *See. e.g., Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432 (10th Cir.1981). Still other courts have created a "self-critical analysis" privilege, whose contours seem to map the deliberative process privilege. *See Skibo v. City of New York*, 109 F.R.D. 58, 63 (E.D.N.Y. 1985). This does not exhaust the types of privileges used by local law enforcement agencies throughout the nation in an attempt to shield information from litigants making claims under the federal civil rights statutes. *See Kelly*, 114 F.R.D. at 656–60 (discussing other types of privileges addressed in civil rights actions).

Recently, two courts have made an admirable effort to address this issue under a single qualified privilege which they have termed the "official information" privilege. *Kelly,*

---

**2.** Defendants make much of the fact that this wrongdoing occurred before the individuals became cooperators and that therefore the material is not relevant to plaintiff's claim that defendants had a policy or custom of permitting misconduct by cooperators. However, the material is indeed relevant since the amount of supervision that defendants should have exercised does depend on how dangerous or violent defendants knew them to be at the time that they became cooperators.

**3.** Moreover, even if this court were to agree with defendant's contention that the deliberative process privilege were to apply, defendant's attempt to protect information on this ground would still

fail. One of the prerequisites of invoking the "deliberative process" privilege is that the claim be made by the head of the agency after personal consideration of the allegedly privileged material. *Equal Opportunity Commission v. American International Group, Inc.*, 1994 WL 376052 (S.D.N.Y.); *Rao v. New York City Health and Hospitals Corp.*, 1993 WL 465342, p. 1 (S.D.N.Y.); *Resolution Trust Corporation v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y.1991). This requirement was not complied with in this case. The head of the IAB did submit an affidavit, but nowhere is it stated that he personally reviewed the documents in question in order to determine that the privilege was applicable.

114 F.R.D. at 660–63; *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.1988). Judge Weinstein's excellent opinion in *King* adopted a procedure for evaluating "all discovery disputes over police records in federal civil rights actions in [the Eastern District of New York], regardless of the label used to refer to that privilege." *Id.* This procedure has often been used in this District to evaluate privilege claims. *See, e.g., Unger,* 125 F.R.D. at 70; *Gibson v. New York Police Officer Carmody,* 1990 WL 52272, p. 3. *Wong v. City of New York,* 123 F.R.D. 481, 482–83 (S.D.N.Y. 1989).

Persuasive as the *King* decision may be, subsequent decisions by the Second Circuit require this court to refrain from applying Judge Weinstein's reasoning in whole. Shortly after *King,* which held that there was a *state* law privilege which could be used by local law enforcement agencies to shield sensitive information from disclosure, the Second Circuit made clear that there was also a *federal* "law enforcement" privilege which protects law enforcement agencies from discovery which interferes with police investigations. *See In re Dep't of Investigation of the City of New York,* 856 F.2d 481 (2d. Cir. 1988). As will be seen shortly, the law enforcement privilege is somewhat narrower than the official information privilege, but under the law of this District, both privileges need to be addressed in any federal civil rights action brought against a local law enforcement agency. Having discussed the applicable privileges generally, the court will now undertake a fuller explanation of each privilege and the material to which the privileges apply.

## A. Law Enforcement Privilege

■ As explained by the Second Circuit, the purpose of the law enforcement privilege is:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference in an investigation.

*In re Dep't of Investigation,* 856 F.2d at 484. The law enforcement privilege has been recognized by federal courts in the absence of statutory foundation. 42 U.S.C. § 552(b)(7)(1996) *See id.* at 483 (*citing Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336 (D.C.Cir.1984) and *Black v. Sheraton Corporation of America,* 564 F.2d 531, 541–42 (D.C.Cir.1977)).

Thus, it should be clear that the focus of the law enforcement privilege is to protect information relating to *investigations.* It is the privacy of police officers involved in an investigation that must be protected, not the privacy of police officers generally. Thus, for example, personnel records of police officers not involved in a particular investigation would not necessarily be privileged unless either a threat to their safety or an interference with the investigation can be shown.

■ This is not to say, of course, that an investigation needs to be ongoing in order for the privilege to be applicable. *Borchers v. Commercial Union Assur. Co.,* 874 F.Supp. 78, 80 (S.D.N.Y.1995); *Black,* 564 F.2d at 546 (D.C.Cir.1977). As Judge Cote makes clear in *Borchers,* the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed. *Borchers,* 874 F.Supp. at 80. An excellent example in this case is information relating to the means by which a recording device is secured on an informant. Clearly, the fact that the investigation has been concluded does not mean that this information can be revealed, since disclosure would compromise future investigations.

■ However, because the focus remains not on privacy concerns, but on the ability of the police department to conduct effective law enforcement, presently and in the future, the redactions of the names of unindicted police officers and civilians cannot be justified under the law enforcement privilege. None of these individuals is presently a subject of investigation, nor have they ever been informants of any kind such that protecting their identity is important to law enforcement investigation. The names appear in the context of a cooperator (whose identity is disclosed) giving the police department information about possible wrongdoing. No in-

vestigations would be jeopardized if the information were revealed.

■ Moreover, the documents comprising the September production cannot fall under the law enforcement privilege either. These documents are basically status reports in which particular action is contemplated against particular officers suspected of misconduct. While this information would certainly have to be protected if the investigation were ongoing, defendants have represented to the court that all of the investigations into the wrongdoing at the 30th precinct have been concluded, and defendants have not provided any legitimate reason why disclosing this information will jeopardize future investigations.

Thus, the only information covered by the law enforcement privilege in this case relates to the means by which the recording device was attached to the informants. Normally, the court would be required at this point to balance the need of the plaintiff for this information with the damage which defendants may suffer should it become publicly disclosed. *U.S. v. Amodeo*, 44 F.3d 141, 147 (2d Cir.1995). In this case, however, there is nothing to balance: plaintiff's need for this information is virtually nonexistent; it has almost nothing to do with his case. Defendants, however, have demonstrated that this information, were it publicly available, would seriously compromise future law enforcement investigations. Thus, it need not be disclosed to plaintiff.

### III. Official Information Privilege

Defendants have argued that certain information contained in the documents submitted to the court for in camera review contain information that should be privileged even though it is not covered by the law enforcement privilege for the reasons explored in Sec. I.B. Specifically, defendants argue that the identities of police officers not indicted as part of the 30th precinct investigations as well as the names of civilians mentioned in

IAB reports need to be shielded in the interests of the privacy of these individuals. Defendants further state that since the information regarding the officers implicates them in wrongdoing, and since there was not enough evidence to charge them with wrongdoing of any kind, the publication of their names could be defamatory and could require the city to give each of them a "name-clearing" hearing. Finally, defendants point out that this information has almost no bearing on plaintiff's case.

Defendants also seek to shield the pre-employment application information of plaintiff Morrissey and defendant Alvarez from disclosure on the grounds that this information was procured in confidence from friends, neighbors, and former employers of the officers and that to disclose this information would compromise the ability of the NYPD to perform effective background checks in the future.

A final series of documents which defendants insist are privileged are the status reports of top IAB officials regarding members of the 30th precinct that were under investigation. Defendants claim that this information is intrusive of the privacy of police officers, and defendants also assert that they need to be able to protect the quality of such evaluations in the future by shielding them from discovery.

The court recognizes that the narrow protection afforded by the law enforcement investigation is insufficient to properly protect sensitive police files from public disclosure. Since a plaintiff who alleges that a police department deprived him of his constitutional rights under § 1983 must prove that the police department had a policy or custom of permitting such deprivations, *Monell v. Dep't of Social Services*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), a wide variety of sensitive and private police material would be relevant to that claim and subject to public disclosure [4]. It is to prevent such a plainly unsatisfactory result that

---

4. For example, it is quite common for a plaintiff to argue that a municipality has violated § 1983 by having a policy or custom of hiring people which it knew would unlawfully deprive people of their constitutional rights. To prove such a claim, a plaintiff could well argue that *all* pre-employment application materials of *all* police officers in a particular precinct are relevant and should be publicly disclosed.

courts in this circuit have held that the state's general concern in protecting police personnel files and investigative reports from "fishing expeditions" is a legitimate state privilege known as the "official information privilege." *Unger v. Cohen,* 125 F.R.D. 67, 69 (S.D.N.Y.1989); *King,* 121 F.R.D. at 190 (E.D.N.Y.1988). Obviously, this privilege is intended to be quite broad and general in its scope. *Id.* (noting that the procedure and test used in determining the applicability of the official information privilege governs "all discovery disputes over police records in civil rights actions"); *Kelly,* 114 F.R.D. at 660; *Unger,* 125 F.R.D. at 69.

■ However, it should be noted that questions of discovery in federal civil rights legislation are properly governed by *federal* law. *See* Fed.R.Evid. 501; *von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987); *Carmody,* 1990 WL at p. 2 (S.D.N.Y.); *Burke,* 115 F.R.D. at 224 (S.D.N.Y.1987). Thus, a federal court cannot apply state privilege to the same extent as it would be applied in state courts, for this could well subvert the federal substantive rights conferred by statutes such as 42 U.S.C. § 1983. *Gibson,* 1990 WL at p. 2; *King,* 121 F.R.D. at 187; *Garner v. Wolfinbarger,* 430 F.2d 1093, 1100 (5th Cir.1970). Instead, before the privilege may be properly invoked, the party resisting disclosure must make a "substantial threshold showing" that specific harms are likely to result from the disclosure of some of these materials. *King,* 121 F.R.D. at 189; *Unger,* 125 F.R.D. at 70. If such a showing is made, the court must then balance the interests favoring and opposing confidentiality to determine whether the state privilege should be applied. *King,* 121 F.R.D. at 190; *Unger,* 125 F.R.D. at 70; *Gibson,* 1990 WL at p. 2.

The factors to be examined in applying the balancing test have been listed in *King.* The factors disfavoring disclosure are the threat to the safety of police officers, the invasion of the privacy of police officers, the weakening of law enforcement programs or procedures, the chilling of police investigative candor, the chilling of citizen complainant candor, and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information. *King,* 121 F.R.D. at 190–96.

■ The court finds that these defendants have made a threshold showing of particular harm to most of the interests listed above should the information they seek to shield be disclosed. They have articulated on behalf of the unindicted police officers and civilians a legitimate privacy interest in making sure that they are not associated with the highly publicized investigation into the corruption at the 30th precinct. The association of these officers and civilians with the 30th precinct scandal could seriously taint their reputation and quite possibly subject the city to liability. Defendants have likewise made a requisite showing of harm as far as the pre-application employment materials of defendant Alvarez and plaintiff Morrissey are concerned. There is certainly a possibility that if such material were to become readily available, the ability of the NYPD to gather honest information from former friends and acquaintances could be severely compromised. However, the court finds that the defendants have failed to make a substantial threshold showing of particular harm insofar as the substance of the IAB status reports are concerned [5]. Numerous courts in this District and elsewhere have expressed skepticism about the assertion by police departments that disclosure will result in the chilling of police candor. *See, e.g., Thompson v. Keane,* 1996 WL 125659, p. 2 (S.D.N.Y.); *Wong,* 123 F.R.D. at 482–84; *King,* 121 F.R.D. at 192. It is extremely unlikely that police candor will at all be affected by disclosure of this report because police officials do not have § 1983 cases in mind when drafting reports of this kind.

Since a requisite threshold showing has been made for much of the material, the

---

5. Naturally, inasmuch as the reports contain the names of unindicted officers and civilians, this matter may be redacted for the same reasons that it can be redacted from all of the other documents in dispute. The court only holds that the substance of the reports may not be withheld on the basis of privilege.

court must now balance the interests articulated by defendants with the need of the plaintiff to have access to this information to determine whether or not it should be disclosed.

Such a balance is easily struck inasmuch as the names of unindicted police officers and civilians are concerned. The identities of these individuals are barely relevant to this case. Plaintiff is alleging that defendants have failed to adequately train and supervise individuals who became police *cooperators;* none of the officers in question were cooperators because charges were never brought against them. Similarly, civilians mentioned in IAB documents were neither the subjects of investigation nor were they cooperators. The only possible relevance that this information would have to plaintiff is that he would then have an opportunity to contact these individuals to determine whether or not they witnessed wrongdoing by cooperators other than that which is already described in the voluminous investigative reports of the IAB presently before the court. Needless to say, plaintiff's interest in conducting this type of "fishing expedition" is considerably outweighed by the interest of defendants is protecting the privacy of unindicted police officers and civilians.

■ The same is true for plaintiff's pre-employment application materials. Plaintiff simply does not need to have access to his own file to prove wrongdoing by defendants. Plaintiff's character is not likely to be a major issue in this case, and these documents would at any rate be of marginal help to him in that regard. Defendant's interest in making sure that such documents are not disclosed in order to preserve the ability of the NYPD to perform effective background checks are considerably more important than any interest plaintiff is able to articulate.

■ The balance tips in favor of disclosure of defendant Alvarez' pre-employment information, however. Defendant Alvarez is the person who actually injured plaintiff, and plaintiff's claim against defendants depends upon his being able to prove that defendant Alvarez (and others like him) was poorly trained and supervised. While defendants make much of the fact that plaintiff is not alleging that defendant Alvarez should never been hired but only that he should never have been made a cooperator, clearly the two issues are related. What defendants knew about defendant Alvarez when he was hired is directly relevant to whether or not defendants acted wrongfully in allowing defendant Alvarez to remain a member of the police force as a cooperator after the IAB had determined that he had committed numerous transgressions as a police officer.

## IV. Confidentiality Order

Defendants have requested that, should the court disagree with the defendants as to any of their assertions of privilege, an order of confidentiality be issued requiring plaintiff not to publicly disclose any of the information produced to him and to use this information only for the purposes of this litigation. This is a reasonable request, particularly since defendants have shown that some of the information could be harmful if disclosed, and the court anticipates no prejudice to plaintiff by requiring him to comply therewith. Should such prejudice appear in the future, this issue can be revisited.

## CONCLUSION

Based upon the foregoing, the court holds that all of the material submitted for in camera review is relevant except for a credit report contained in the personnel files of defendant Alvarez. The court further holds that under the law enforcement privilege, defendants may redact from any police records information about the means by which recording devices were secured on a cooperator's person. Furthermore, the names of unindicted police officers and civilians contained in any of the records of the NYPD or the IAB may be redacted because they are privileged under the official information privilege. The material contained in the September production must also be produced. Of course, the names of unindicted officers, civilians, and the information about the recording device may be redacted from this material for the reasons described above.

Finally, an order will be filed simultaneously with this opinion preventing plaintiff

from using the material he obtains as a result of this opinion for any purposes other than the conduct of this litigation.