NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS, by Richie PEREZ, National Coordinator; and Kelvin Daniels; Poseidon Baskin; Djibril Toure; Hector Rivera; Victor Rodriguez; and Kahil Shkymba, individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

The CITY OF NEW YORK; the New York City Police Department; and New York City Police Officers John Does # 1–500; Mayor Rudolph Giuliani; and New York City Police Commissioner Howard Safir, in their individual and official capacities, Defendants.

No. 99 Civ. 1695(SAS).

United States District Court,
S.D. New York.

April 7, 2000.

---

See also 194 F.R.D. 105.

Natalie R. Williams, Jennifer Cowan, Debevoise & Plimpton, New York City, Nancy Chang, Jonathan C. Moore, New York City, for Plaintiffs.

Lisa S.J. Yee, Assistant Corporation Counsel, Corporation Counsel for the City of New York, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Introduction

Plaintiffs are suing defendants for the alleged unconstitutional practices of the Street Crime Unit ("SCU") of engaging in suspicionless stops and frisks of minorities, particularly young black and Hispanic men. Defendants now move under Rule 26(c) of the Federal Rules of Civil Procedure for a protective order shielding certain documents from discovery on the ground that they are protected from disclosure under the deliberative process and/or law enforcement privilege. In particular, defendants seek to withhold the documents corresponding to the following entries in defendants' privilege log: 6, 7, 11, 13, 46, 57, 60, 61, 62, 68, 69, 70, 76, 83 and 86. *See* Privilege Log, attached as Exhibit B to the Declaration of Lisa S.J. Yee, defendants' attorney, in Support of Defendants' Motion for a Protective Order, sworn to February 16, 2000 ("Yee Decl."). For the following reasons, defendants' motion is granted in part and denied in part.

### II. Discussion

#### A. Legal Standards

##### 1. Scope of Discovery

 "In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *Morrissey v. City of New York,* 171 F.R.D. 85, 88 (S.D.N.Y.1997) (citing Fed.R.Civ.P. 26(b)(1)); *see also United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Given the breadth of discovery in federal actions, all of the documents listed above are relevant—whether they are discoverable is a different matter. Because plaintiffs have asserted federal constitutional claims in this action, defendants' claims of privilege, including deliberative process and law enforcement privilege, are governed by federal common law. *See Burka v. New York City Transit Auth.,* 110 F.R.D. 660, 663–64 (S.D.N.Y.1986) (citation omitted). These privileges are, however, qualified and as such must be balanced against a litigant's substantial need for the information in issue. *See U.S. v. Davis,* 131 F.R.D. 391, 395 (S.D.N.Y.1990) (law enforcement privilege); *Natural Resources Defense Council, Inc. v. Fox,* 94 Civ. 8424, 1998 WL 158671, at *5 (S.D.N.Y. Apr. 6, 1998) (deliberative process privilege); *see also Borchers v. Commercial Union Assurance Co.,* 874 F.Supp. 78, 80 (S.D.N.Y.1995) (citations omitted).

##### 2. Deliberative Process Privilege

 There are two requirements for invocation of the deliberative process privilege: the document asserted to be privileged must be both "predecisional" and "deliberative." *See Hopkins v. United States Dep't of Housing and Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991). A document is predecisional when it is " 'prepared in order to assist an agency decisionmaker in arriving at [her] decision.' " *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). Thus, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Central Partnership, Inc. v. Cuomo,* 166 F.3d 473 (2d Cir.1999) (internal quotation marks and citation omitted). Other courts have held that a document will be considered predecisional if the agency can "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Providence Journal Co. v. United States Dep't of the Army,* 981 F.2d 552, 557 (1st Cir.1992) (internal quotation marks and citations omitted).

 A document is deliberative when it is " 'actually . . . related to the process by which policies are formulated.' " *Hopkins,* 929 F.2d at 84 (quoting *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (en banc)). Other courts have looked at whether the document "(i) formed an essential link in a specified consultative

process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Providence Journal Co.*, 981 F.2d at 559 (quoting *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir.1988)). Thus, the privilege "'focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Hopkins*, 929 F.2d at 84 (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)) (internal quotation marks and citation omitted). "The privilege does not, as a general matter, extend to purely factual material." *Id.* (citation omitted).

### 3. Law Enforcement Privilege

The purpose of the law enforcement privilege is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir.1988) (citations omitted). "[T]he privilege is designed not only to facilitate investigations, but also to protect individuals whose reputation may be damaged by disclosure of investigative leads or statements from witnesses developed during the investigation." *Id.* at 486.

### B. Documents in Dispute

As stated earlier, the documents defendants seek to withhold correspond to certain entry numbers in defendants' privilege log. These documents have been submitted for *in camera* review. Based on that review and a review of the materials submitted in support of the assertion of the privileges, the following constitute the rulings of this Court.

### 1. Privilege Log Entries 6 and 7

These documents consist of memoranda from and to the Commanding Officer, Patrol Borough Queens South, in response to a request from the Chief of Patrol regarding the relocation and expansion of the SCU. *See* Declaration of Joseph P. Dunne, Chief of Department of the Police Department of the City of New York, in Support of Defendants' Motion for a Protective Order, sworn to February 15, 2000 ("Dunne Decl."), ¶ 4. These memoranda have been provided to plaintiffs in redacted form. *See* Yee Decl., Ex. C.

Defendants are claiming the deliberative process privilege with regard to the redacted portions of these memoranda because they reflect the deliberative process by which the Patrol Borough identified a site for the SCU at the 107th Precinct. *Id.* The decision on where to relocate, however, is not the type of policy-oriented decision protected by the deliberative process privilege. *See Grand Central Partnership*, 166 F.3d at 482 ("the record must bear on the formulation or exercise of policy-oriented judgment"); *Hopkins*, 929 F.2d at 84 (to be deliberative, document must be "'actually ... related to the process by which policies are formulated.'") (quoting *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc)). Defendants are therefore ordered to produce the previously redacted portions of these memoranda.

### 2. Privilege Log Entry 11

This document consists of a memorandum prepared by a confidential aide to the Chief of Department containing an overview and analysis of issues concerning the SCU and various proposals for change. *See* Dunne Decl., ¶ 5. Defendants are claiming the deliberative process privilege because the "free-flowing exchange of ideas between the Chief of Department and his confidential aide is essential to the development of sound law enforcement policies." *Id.* However, because the memorandum does not relate to a particular decision made by the Chief of Department, it cannot be considered predecisional. Defendants are therefore ordered to produce this memorandum.

### 3. Privilege Log Entry 13

This entry consists of various memoranda from the Chief of Patrol to the Chief of

Department, including memoranda from the Special Operations Division and SCU, reporting on activities and discussing plans for deployment, containing details of investigations, identities of officers, law enforcement strategy and tactics, opinions, analysis and deliberations. *See* Dunne Decl., ¶ 3. These memoranda relate, in part, to special enforcement programs and initiatives involving the SCU, the disclosure of which would reveal details of law enforcement investigations and techniques. *Id.* One memorandum reports on enforcement activity against organized crime and details intelligence gathered to date as well as plans for future law enforcement endeavors. *Id.* Two other memoranda discuss specific deployment tactics used in a program to reduce subway crime. *Id.*

■■■ Defendants have claimed both deliberative process and law enforcement privilege with regard to this category of documents. Although these documents do contain highly sensitive information, that information does not relate to a particular decision made by any agency. Accordingly, the deliberative process privilege is not applicable. However, the law enforcement privilege, whose chief goal is to prevent disclosure of law enforcement techniques and procedures, does apply here. After reviewing the entire class of documents, I order disclosure of all of the documents except for those which describe investigatory techniques and strategies.[1]

### 4. Privilege Log Entries 46, 68, 69, 70 and 83

These documents consist of statistical analyses of personnel information and arrests by SCU officers. In particular, the following statistical information is in issue: SCU officer demographics; Department-wide demographics; arrest, summons and juvenile apprehension data for the Department in 1988; 1998 crime and arrest data by patrol borough; SCU deployment in 1998; 911 calls for a week in March 1999 that reported use of a

gun; demographics on arrests Department-wide and by the SCU; and arrests by the SCU that were declined for prosecution. *See* Declaration of Maureen E. Casey, Deputy Commissioner for Policy and Planning of the Police Department of the City of New York, sworn to February 16, 2000 ("Casey Decl."), at ¶ 4.

■■■ Defendants are claiming deliberative process, attorney-client and work product privileges with regard to these documents. Because these documents are neither predecisional nor deliberative, the deliberative process privilege is unavailing. While it appears highly unlikely that these documents will be covered by the attorney-client privilege, there is a slim chance that they may be protected work product—although this privilege would not apply to the purely factual data collected in these documents. Accordingly, defendants should produce these documents forthwith, but may redact those portions they believe to be covered by the attorney-client or work-product privileges.[2]

### 5. Privilege Log Entry 57

This class of documents consist of disciplinary records concerning individual officers who have served on the SCU from January 1995 to the present, including Central Personnel Index, Civilian Complaint Review Board ("CCRB"), and Internal Affairs Bureau ("IAB") records, and records relating to command discipline, charges and specifications. *See* Declaration of Patrick E. Kelleher, First Deputy Commissioner of the Police Department of the City of New York, in Support of Defendants' Motion for a Protective Order, sworn to February 11, 2000 ("Kelleher Decl."), ¶ 2. These disciplinary records contain the accounts of the officer, officer witnesses and civilian witnesses relevant to the inquiry, including past and current residences, family, education, employment, arrest and summons record, selective service record and financial status. *Id.* ¶ 3.

---

**1.** The following documents are protected by the law enforcement privilege: Bates # 19739–19741; 19751–19756; 19785–19788; 19798–19801; 19813–19821; 19822–19824; 19825–19828; and 19829–19832.

**2.** This Court is currently considering these claims of privilege.

The officer's medical and/or psychological history may also be included. *Id.*

Defendants contend that disclosure of these records would have a chilling effect on witnesses as the "Department's ability to represent that information provided will be kept strictly confidential is an indispensable component in certain investigations." *Id.* ¶ 8. Defendants also argue that disclosure would deter officers from reporting misconduct by a fellow officer, would jeopardize the safety of civilian witnesses, and would be unfair to the individual officers, causing injury to their reputations. *Id.* ¶¶ 6, 9–10. Defendants assert both the deliberative process and law enforcement privilege with regard to these records.

The law enforcement privilege has some applicability here. An investigation need not be ongoing for the law enforcement privilege to apply as "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed." *Morrissey,* 171 F.R.D. at 90 (citing *Borchers,* 874 F.Supp. at 80). This is the case here, at least with respect to witness identification. On the other hand, the deliberative process privilege is inapplicable because it does not protect personnel decisions by law enforcement agencies. *See Mercado v. Division of New York State Police,* 989 F.Supp. 521, 523 n. 1 (S.D.N.Y.1998). *See also Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D.Ca.1995) (internal quotation marks and citations omitted).

> The "deliberative process" privilege, . . . is also inappropriate for use in civil rights cases against police departments. The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy. So limited, this privilege would offer no protection at all to most of the kinds of information police departments would routinely generate.

There is, however, another privilege to be considered, the so-called "official information" privilege. This privilege was first rooted in the "state's general concern in protecting police personnel files and investi-

gative reports from 'fishing expeditions.' " *Morrissey,* 171 F.R.D. at 92. *See also King v. Conde,* 121 F.R.D. 180 (E.D.N.Y.1988) (Weinstein, J.) (discussing scope of privilege in context of a federal civil rights action against a local police department). Apparently, "[f]ederal common law recognizes a qualified privilege for official information." *Soto,* 162 F.R.D. at 613 (citation omitted); *see also Green v. Fulton,* 157 F.R.D. 136, 140 (D.Me.1994) (the "official information" privilege, as formulated by the federal courts, was held applicable to the type of police documents requested in plaintiff's § 1983 action). Regardless of its genesis, this official information privilege must be "addressed in any federal civil rights action brought against a local law enforcement agency." *Morrissey,* 171 F.R.D. at 90.

Identifying which privileges apply is not the end of the inquiry, however. Because a plaintiff who alleges that a police department deprived him of constitutional rights must prove that the department had a policy or custom of permitting such deprivations, much of the information contained in the disciplinary records is relevant to such a claim. *See Conway v. Dunbar,* 121 F.R.D. 211, 212 (S.D.N.Y.1988) (disciplinary records of defendant police officers found to be "central to the proof of plaintiff's allegations"). Only by reviewing these records *en masse* can plaintiffs do the kinds of analyses needed to show a practice or policy of widespread constitutional violations.

Therefore, regardless of the label given to the asserted privilege, this Court must balance the "plaintiff's interests in disclosure against the state's legitimate concern of protecting the confidentiality of the officers' personnel files from unnecessary intrusions." *Mercado,* 989 F.Supp. at 522 (citing *Unger v. Cohen,* 125 F.R.D. 67, 69 (S.D.N.Y. 1989) and *King,* 121 F.R.D. at 190). Judge Jack B. Weinstein aptly summarized these factors as follows:

> The factors disfavoring disclosure are the threat to the safety of police officers, the invasion of the privacy of police officers, the weakening of law enforcement programs or procedures, the chilling of police

investigative candor, the chilling of citizen complainant candor, and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information.

*Morrissey,* 171 F.R.D. at 92 (citing *King,* 121 F.R.D. at 190–96).

▮ In balancing these factors, certain considerations should be kept in mind. First, although the privacy rights of officers are not inconsequential, they should be "limited in view of the role played by the police officer as public servant who must be accountable to public review." *King,* 121 F.R.D. at 191. Moreover, "these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." *Soto,* 162 F.R.D. at 616. Here, plaintiffs' need for the documents outweighs any invasion of the officers' privacy rights especially in light of the carefully crafted protective order already in place.[3] Second, this Court must consider plaintiffs' need for the information and its availability from alternative sources. Some courts have viewed this as "a most important factor." *See, e.g., Crawford v. Dominic,* 469 F.Supp. 260, 263 (E.D.Pa.1979); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D.N.Y.1984). Generally, in civil rights cases against police departments, it is unlikely that plaintiffs will be able to obtain information of comparable quality from any other source. *See Soto,* 162 F.R.D. at 616. This is certainly the case here.

▮ The next factor is the public's interest in obtaining the release of this information. Here, the strong public interest in uncovering the civil rights violations alleged in this Complaint would be substantially harmed if access to the relevant portions of the disciplinary records is denied. This is especially true given that the case is brought under 42 U.S.C. § 1983.

Each citizen acts as a private attorney general who takes on the mantel of the

sovereign, guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

*Wood v. Breier,* 54 F.R.D. 7, 10–11 (E.D.Wis. 1972) (internal quotation marks and citations omitted). Thus, the "great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery ... Together, these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive." *King,* 121 F.R.D. at 195.

Here, a balancing of the relevant factors in light of the above considerations dictates that the disciplinary records be disclosed in redacted form. In their Second Amended Complaint, plaintiffs have alleged the following:

Generally, although not always, SCU officers operate at night in teams, roaming the streets in unmarked cars, including taxi cabs. Until recently, the unit's officers were in plainclothes. SCU officers routinely stop or "toss" people at random, often based solely on an individual's race and/or national origin. In a typical stop, SCU officers will rush up to an individual on the street or pull over a car. Those stopped are then peppered with questions about whether they possess firearms and/or drugs and why they are in the area. Often, SCU officers thoroughly frisk the people they stop and completely search their persons and belongings, scouring clothes, belongings, wallets and vehicles, despite the absence of reasonable suspicion or probable cause. The SCU's stops and frisk are sometimes violent encounters, with SCU officers shoving individuals

---

**3.** Defendants will also be permitted to redact certain identifying information from these records.

against walls, cars and sometimes throwing them to the ground.

Second Amended Class Action Complaint for Declaratory and Injunctive Relief and Individual Damages, ¶ 43. The gravity of these alleged offenses requires full and open disclosure especially in light of the current heightened sensitivity to the issue of police misconduct brought about by recent events involving the SCU. Accordingly, defendants must disclose the time, date and location of the alleged misconduct and a short narrative describing the nature of the complaint and what action, if any, was taken in response. All other identifying information, such as the names, addresses and personal information of officers and witnesses, should be redacted from the records prior to their disclosure.[4]

### 6. Privilege Log Entries 60 and 61

■ These documents, consisting of memoranda between the Commanding Officer, Quality Assurance Division, and the First Deputy Commissioner to Commanding Officer, Quality Assurance Division, reflect the results of an evaluation of the SCU's compliance with certain administrative procedures of the Department. *See* Kelleher Decl., ¶ 15. After reviewing these documents, I conclude that the deliberative process does not apply. These memoranda, which reflect the degree of the SCU's compliance with already established procedures, should therefore be disclosed forthwith.

### 7. Privilege Log Entry 62

■ This document is a memorandum from the Commanding Officer, Investigation and Review Section to the Chief of Department, analyzing disposition of disciplinary actions involving SCU officers for the period 1996–1998. *See* Dunne Decl., ¶ 6. It contains an analysis of allegations against SCU officers by type and disposition and was prepared to respond to possible inquiries from the public. *Id.* This type of factual material

is not protected by the deliberative process privilege and must be disclosed.[5]

### 8. Privilege Log Entry 76

■ This class of documents consist of briefing documents selected and compiled by the Office of the Criminal Justice Coordinator in preparation for Mayor Giuliani's testimony before the U.S. Civil Rights Commission, including news articles, departmental records and other publications. *See* Declaration of Steven M. Fishner, Criminal Justice Coordinator in the Office of the Mayor of the City of New York, in Support of Defendants' Motion for a Protective Order, sworn to February 14, 2000 ("Fishner Decl."), ¶ 3. Defendants contend that the "selection of the documents and information contained therein is the result of staff analysis and deliberations." *Id.* ¶ 5. Although the Mayor's staff did decide what materials to include in the Mayor's briefing, this is not the type of decision-making protected by the deliberative process privilege. Furthermore, defendants themselves state that the briefing materials in issue contained factual information. Accordingly, defendants' invocation of the deliberative process privilege cannot be sustained and the materials must be produced.

### 9. Privilege Log Entry 86

■ This document is a Review and Analysis of the CCRB's Semi–Annual Status Report for the period January—December 1998. *See* Kelleher Decl. ¶ 15. It was prepared to advise the Police Commissioner as to the accuracy of statements made and conclusions reached by the CCRB in its report. As such, it is the type of informational document not protected by the deliberative process privilege and therefore must be produced.

## III. Conclusion

Consistent with the rulings set forth above, defendants shall produce the documents, in

---

4. Plaintiffs may, however, seek reconsideration of this part of the Order after the class certification motion has been decided and the identities of individual officers have been discovered.

5. I note that this material may be relevant to plaintiffs' *Monell* claims but does not involve the same privacy interests as the documents identified in Entry 57 thus lending further support to my decision to only release those documents in redacted form.

redacted form where appropriate, corresponding to privilege log entries 6, 7, 11, 13, 46, 57, 60, 61, 62, 68, 69, 70, 76, 83 and 86, unless otherwise exempted from disclosure.