**Susan M. PETERSON and Stanley W. Peterson, Plaintiffs,**

v.

**WALLACE COMPUTER SERVICES, INC., Defendant.**

No. 2:96–CV–88.

United States District Court, D. Vermont.

Nov. 5, 1997.

David F. Buckley, Bellows Falls, VT, Thomas Walter Costello, Brattleboro, VT, for Plaintiffs.

Karen McAndrew, Jeffrey James Nolan, Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Defendant.

## CORRECTED [1] OPINION AND ORDER

SESSIONS, District Judge.

This is a sexual harassment suit filed by Susan Peterson ("Peterson") against her for-

---

1. Two lines on page 2 of the original opinion were inadvertently left off. They are the lines

mer employer, Wallace Computer Services ("Wallace"). The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). On December 6, 1996, the Magistrate Judge issued an Opinion and Order denying Peterson's motion to compel disclosure of certain notes and memoranda created by Wallace employees in the course of their investigation of Peterson's allegations of sexual harassment. Peterson has filed objections to the Opinion and Order.

## I. FACTUAL BACKGROUND

The relevant facts of this case are not challenged by either party. Briefly, Peterson was employed by Wallace at its plant in Manchester, Vermont from 1993 until the end of 1995. On November 7, 1995, following a number of incidents of sexual harassment, Peterson contacted Barry White, Wallace's Director of Human Resources, at its corporate headquarters in Hillside, Illinois. She informed him of the incidents, and also of the fact that she had received paperwork from the Vermont Attorney General's Office to file a claim against Wallace. White told Peterson that he would visit the Manchester plant to investigate her allegations, and would inform her of any responsive actions to be taken.

White visited the plant on November 9 and 10, 1995, and interviewed several employees regarding Peterson's allegations. He conducted this investigation with the understanding that Peterson was preparing to take legal action against Wallace. During the course of the investigation, White consulted with Steve Carson, Wallace's in-house counsel, and Sue Payne, the company's outside counsel. Upon returning to Illinois, White provided notes of his interviews to Ms. Payne, and prepared three memos regarding his conversations with Payne and Carson, and his interviews with several employees, including Peterson. He did not, however, prepare a written report of his investigation or a summary of findings.

beginning "... 1995. On November 7 .... and ending ... contacted Barry White, Wallace's

White was assisted in his investigation by Manchester plant manager Lee Killian ("Killian"). Killian scheduled employee interviews for White, which he did not attend, and prepared handwritten notes of his conversations with the employees regarding Peterson's allegations. He forwarded these notes to White. Killian also prepared a memo based on his conversations with Wallace employees, which he sent to attorney Payne.

Peterson filed suit against Wallace on March 11, 1996, alleging, *inter alia*, that the acts and omissions of Wallace created a hostile work environment for Peterson, thus constituting sexual harassment in violation of Vt. Stat. Ann. tit. 21 § 495 *et seq* (1987 & Supp. 1996). Wallace has defended against this claim on the ground that it conducted an adequate investigation of Peterson's allegations. Wallace does not object to the depositions of White, Killian, or other employees.

On October 4, 1996, Peterson filed a motion to compel the production of the memoranda and notes prepared by White and Killian in the course of their investigation of Peterson's allegations. Wallace has asserted the attorney-client privilege and the work product doctrine with regard to the sought materials. In his Opinion and Order, the Magistrate Judge held that the notes and memoranda of White and Killian were protected by the attorney-client privilege and the work product doctrine. Furthermore, the Magistrate Judge held that Wallace had not waived either the privilege or work-product protection by asserting the adequacy of its investigation as a defense to Peterson's allegations.

## II. DISCUSSION

### A. Review of the Magistrate Judge's Order

 Upon objection by a party, the district court must modify or set aside any portion of a magistrate judge's nondispositive pretrial order which is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). The Court reviews dis-

...." This corrected opinion restores the lines.

positive pretrial motions decided by a magistrate judge *de novo.* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). Because matters concerning discovery are generally considered nondispositive, the Court applies the "clearly erroneous or contrary to law" standard in its present review of the Magistrate Judge's Opinion and Order. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.), *cert. denied sub nom Greenspan, Jaffe & Rosenblatt v. Sara Lee Corp.*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In holding that the attorney-client privilege applies to the materials sought by Peterson, the Magistrate Judge found that White, acting as Wallace's representative, conducted his investigation and communicated its results to Wallace's counsel in preparation for anticipated litigation. The Court defers to these determinations because on the record evidence presently before the Court, the factual findings are not clearly erroneous, nor is the legal conclusion contrary to law. With regard to the work product doctrine, the Magistrate Judge held it applicable because the notes and memoranda at issue were prepared for Wallace's counsel in anticipation of litigation. The Court sustains these conclusions as well.

■ Peterson's major objection to the Magistrate Judge's Opinion and Order is his determination that neither the attorney-client privilege nor the work product doctrine had been waived. Peterson contends that by defending against Peterson's hostile work environment claim on the basis of the timeliness and sufficiency of its investigation,[2] Wallace has placed the protected materials in issue, and has thereby waived both the attorney-client privilege and the protection of the work-product doctrine.

### B. Attorney-Client Privilege

The attorney-client privilege is the oldest of all the common law privileges for confidential communications. 8 J. Wigmore, Evidence § 2290 (McNaughton rev.1961). The privilege promotes complete and truthful communication, to two ends: first, it allows a client to safely seek legal representation in protection of her interests; and second, it empowers the attorney to provide sound legal advice, thus serving public interests as well. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).

■ As hallowed as the attorney-client privilege is, it does not lightly tolerate abuse. As has often been said, the privilege cannot be used as both a shield and a sword. *See, e.g., Bilzerian*, 926 F.2d at 1292; *see also Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) ("The privilege takes flight if the relation is abused"). Indeed, the privilege may be waived, either explicitly or implicitly. The doctrine of implicit waiver, also known as "at

---

**2.** Peterson's hostile work environment claim is brought under Vermont's Fair Employment Practices Act ("FEPA"), Vt. Stat. Ann. tit. 21 § 495 *et seq.* FEPA is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and is governed by the same standards and burdens of proof as the federal statute. *Graff v. Eaton*, 157 Vt. 321, 323, 598 A.2d 1383, 1384 (1991) (quoting with approval *Cobb v. Dufresne–Henry, Inc.*, 603 F.Supp. 1048, 1053 (D.Vt.1985)). Under Title VII, in order to succeed on a hostile work environment claim, a plaintiff must first prove the existence of discrimination in the workplace, and second, impute the offending employee's actions to the employer. *Kotcher v. Rosa and Sullivan Appliance*

*Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992). The court is to apply common law agency principles in determining whether an employee's actions are to be imputed to the employer. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). The Second Circuit has interpreted these principles to require that a plaintiff show that the employer "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher*, 957 F.2d at 63. It therefore follows that an employer may defend itself successfully against a hostile work environment claim by demonstrating the adequacy of its response to a plaintiff's complaints. Wallace has asserted such a defense in this case.

issue" waiver, was first set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975). There, the court held that waiver may be found where the movant shows:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 581. *See also Bilzerian*, 926 F.2d at 1292 (citing *Hearn*). "Thus, the privilege may be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292.

■ In the present case, Wallace seeks the protection of the attorney-client privilege for communications that it itself put at issue in the case. By defending itself on the ground that it conducted an adequate investigation of Peterson's allegations of sexual harassment, Wallace has, through an affirmative act, placed the nature of its investigation in dispute. Wallace cannot at once defend on the basis of its investigation and employ the attorney-client privilege to prevent the plaintiff from exploring the adequacy of that investigation. Rather, fairness requires that Peterson be allowed to make such inquiry in order to rebut Wallace's defense. Indeed, the only way that Peterson, or, for that matter, the finder of fact, may evaluate the sufficiency of Wallace's defense is through full disclosure of the content of the investigation.

The Court's conclusion is in accord with *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084 (D.N.J.1996). In that case, as in the present one, plaintiffs asserted a hostile work environment claim against their former employer. In an administrative hearing held prior to the filing of plaintiffs' suit in federal court, the employer defended itself on the ground that it had conducted an appropriate investigation of plaintiffs' allegations. When the plaintiffs sought to depose the employer's attorney, who had conducted the investigation, the employer asserted the attorney-client privilege. Ultimately, the court ordered disclosure of the investigative materials, finding that the employer had waived the attorney-client privilege (and the protections of the work-product doctrine). *Id.* at 1096.

The New Jersey Supreme Court recently expressed its support for *Harding* and for the proposition that an employer may waive its attorney-client privilege by asserting the adequacy of its investigation. *Payton v. New Jersey Turnpike Auth.*, 148 N.J. 524, 691 A.2d 321, 335–36 (1997). The court stated: "[I]t appears that defendant, by relying on the affirmative defense of having conducted an effective investigation into plaintiff's allegations, has waived the attorney-client privilege, assuming that the privilege applied to certain documents relating to the investigation." *Id.*, 691 A.2d at 336.

The Magistrate Judge distinguished *Harding* from the present case by noting that unlike Wallace, the employer in *Harding* resisted any inquiry whatsoever into its investigation, even by way of deposition. In contrast, Wallace has agreed to the depositions of White, Killian, and other employees, and agrees that Peterson may inquire into the adequacy of the investigation in those depositions. While it is clear that Wallace asserts the attorney-client privilege with regard to a narrower range of discovery material than the employer in *Harding*, this is of little consequence. In essence, what Wallace argues, and what the Magistrate Judge accepted, is that in light of the information available to Peterson through depositions of White, Killian, and others, the notes and memoranda are not vital to Peterson's case. The Court cannot agree with this conclusion, given the proof requirements of Peterson's claim.

■ In order to establish her hostile work environment claim, Peterson must show that Wallace "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir.1992). Wallace must have taken "immediate and corrective action" in response to Peterson's allegations in order to avoid liability. 29 C.F.R. § 1604.11(d) (1997) (cited with

approval in *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994)); *see also Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995) ("An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it"). In determining whether Wallace's investigatory and remedial conduct was appropriate, the finder of fact must consider several factors, including timeliness, thoroughness, and employer bias. *Payton*, 691 A.2d at 327; *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995). Peterson's ability to present evidence on these dimensions of Wallace's investigation would be impaired severely were the notes and memoranda produced in the course of the investigation not disclosed to her.

It is likely that Peterson could obtain sufficient information regarding the timeliness of Wallace's investigation through depositions, but thoroughness and bias are not so easily ascertained. It is not enough, for example, that Wallace disclose the names of the employees it interviewed in the course of its investigation, as " 'the information plaintiff may develop by deposing the same informants ... would not necessarily replicate what those informants told the [defendant].' " *Payton*, 691 A.2d at 336 (citation omitted) .[3] The appropriateness of Wallace's actions in response to Peterson's allegations depends in part on the information that it was given, and therefore Peterson must know exactly what information Wallace had in order to rebut Wallace's defense effectively. Similarly, Wallace's conduct cannot be evaluated accurately without knowing the attitudes of White and Killian toward Peterson, and their attitudes toward the investigation. Depositions alone may be insufficient to expose such issues of bias.

In sum, the Court sustains the Magistrate Judge's holding that the attorney-client privilege applies to the investigative notes and memoranda at issue, but concludes that Wallace has waived the privilege by defending itself upon the adequacy of the investigation. Had Wallace not raised such a defense, the materials would remain privileged.

## C. Work Product Doctrine

First set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and subsequently codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work product doctrine shields from discovery materials prepared "in anticipation of litigation" by a party or a party's representative absent a showing of necessity. Thus, the doctrine provides a qualified protection against disclosure. "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir.1995).

As discussed with regard to the attorney-client privilege, the investigative notes and memoranda in this case are vital to Peterson in order to refute Wallace's claimed adequacy of its investigation. Accordingly, Peterson has made a showing of substantial need, and therefore the work product doctrine will not preclude disclosure in this case. Consistent with Rule 26(b)(3), the Magistrate Judge should conduct an *in camera* review of the notes and memoranda to "protect against disclosure of the mental impressions, conclu-

---

**3.** In reaching this conclusion, the court explicitly disagrees with the case of *Ryall v. Appleton Elec. Co.*, 153 F.R.D. 660 (D.Colo.1994). There, the district court set aside a magistrate judge's order compelling production of notes taken in the course of an employer's sexual harassment investigation. The magistrate judge held that the defendant had waived the attorney-client privilege and work-product immunity by raising a defense of good faith investigation. Setting aside the opinion and order of the magistrate judge, the district court held that application of the privilege would not deny the plaintiff access to information vital to her defense—the third requisite element for waiver under *Hearn v. Rhay*. The court concluded that since the defendant had identified who conducted the investigation and everyone interviewed, the plaintiff could "now construct a fairly complete picture of the actions Appleton took to investigate her claim" without recourse to the investigative notes. *Id.* at 663. In this Court's estimation, that picture is rather *incomplete*.

sions, opinions, or legal theories" of Wallace's attorneys or their representatives concerning the litigation. Fed.R.Civ.P. 26(b)(3).

## III. CONCLUSION

Based on the foregoing analysis, the Magistrate Judge's Opinion and Order Denying Peterson' motion to compel (Paper No. 27), is hereby SET ASIDE and the motion to compel (Paper No. 17) is GRANTED.