NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS, by Richie Perez, National Coordinator; and Kelvin Daniels; Poseidon Baskin; Djibril Toure; Hector Rivera; Victor Rodriguez; and Kahil Shkymba, individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

The CITY OF NEW YORK; the New York City Police Department; and New York City Police Officers John Does # 1–500; Mayor Rudolph Giuliani; and New York City Police Commissioner Howard Safir, in their individual and official capacities, Defendants.

No. 99 Civ. 1695 SAS.

United States District Court, S.D. New York.

May 5, 2000.

See also 194 F.R.D. 88.

Cathering W.H. So, Kristen K. Sauer, Jeffrey K. Powell, Debevoise & Plimpton, Nancy Chang, Jonathan C. Moore, New York City, for Plaintiffs.

Lisa S.J. Yee, Assistant Corporation Counsel, Corporation Counsel for the City of New York, New York City, for Defendants.

*MEMORANDUM OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. Introduction

Plaintiffs are suing defendants for the alleged unconstitutional practices of the Street Crime Unit ("SCU") of engaging in suspicionless stops and frisks of minorities, particularly young black and Hispanic men. Defendants now move under Rule 26(c) of the Federal Rules of Civil Procedure for a protective order shielding certain documents from discovery on the ground that they are protected from disclosure under the attorney-client and/or work product privilege. In particular, defendants seek to withhold the documents corresponding to the following entries in defendants' privilege log: 46, 68, 69, 70 and 83. *See* Addendum to Privilege Log, attached as Exhibit A to the Declaration of Lisa S.J. Yee, defendants' attorney, in Support of Defendants' Motion for a Protective Order, sworn to March 22, 2000 ("Yee Decl."). For the following reasons, defendants' motion is denied.

## II. Discussion

### A. Legal Standards

#### 1. Scope of Discovery

"In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *Morrissey v. City of New York,* 171 F.R.D. 85, 88 (S.D.N.Y.1997) (citing Fed. R.Civ.P. 26(b)(1)); *see also United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Given the breadth of discovery in federal actions, all of the documents listed above are relevant and, in the absence of a privilege, discoverable.

#### 2. Attorney–Client Privilege

A party asserting the attorney-client privilege has the burden of demonstrating: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction*

*Prod. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996) (citations omitted).

### 3. Work Product Privilege

Federal Rule of Civil Procedure 26(b)(3), which codifies the principles articulated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), grants limited protection against discovery to documents and materials prepared "in anticipation of litigation." Rule 26(b)(3) provides in relevant part that

> a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

■ The Second Circuit has interpreted the "in anticipation of litigation" requirement broadly. Documents should therefore be deemed prepared in "anticipation of litigation" if " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.' " *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice and Procedure* § 2024, at 343 (1994) (emphasis in original) (citations omitted)).

### B. Documents in Dispute

#### 1. The Documents

The documents defendants seek to withhold consist of statistical analyses of personnel information and arrests by SCU officers.[1] These documents contain the statistics compiled and the analysis performed by the Office of Management Analysis and Planning at the request of George A. Grasso. *See* Declaration of George A. Grasso, Deputy Commissioner for Legal Matters of the Police Department of the City of New York, sworn to March 20, 2000 ("Grasso Decl.") ¶ 1. This information was needed to assist Police Commissioner Howard Safir in his appearances at oversight hearings before the City Council's Committee on Public Safety (the "Committee") and the United States Commission on Civil Rights (the "Commission"). *Id.*

On March 22, 1999, Police Commissioner Safir appeared at an oversight hearing before the Committee. *Id.* ¶ 3. Shortly thereafter, he received a letter asking him to respond to certain questions regarding the SCU before his second appearance before the Committee on April 19, 1999. *Id.* ¶ 4. *See also* Letter from Sheldon Leffler, Chair of the Committee on Public Safety, to Commissioner Safir, dated March 26, 1999 ("Leffler Letter"), attached as Exhibit B to the Grasso Declaration. In response to this letter, Mr. Grasso asked Michael Farrell, Deputy Commissioner for Policy and Planning, to request that his office, the Office of Management Analysis and Planning, assist in gathering information relevant to the City Council's request. *Id.* ¶ 7. It was in response to Mr. Grasso's request that the documents in dispute were created.

These documents have been submitted for *in camera* review. Based on that review and a review of the materials submitted in support of the assertion of the privileges, I find that neither the attorney-client nor work

---

1. In particular, the following statistical information is in issue: SCU and Department-wide officer demographics (entry 46); 1998 crime and arrest data by patrol borough; SCU deployment in 1998; 911 calls for a week in March 1999 that reported use of a gun (entry 68); SCU deployment in 1998 including demographic information on arrests (entries 69 and 83); and arrests by the SCU that were declined for prosecution or deferred (entry 70). *See* Declaration of Maureen E. Casey, Deputy Commissioner for Policy and Planning of the Police Department of the City of New York, sworn to February 16, 2000 ("Casey Decl."), at ¶ 4.

product privilege shields these documents from disclosure.

## 2. Attorney–Client Privilege

 Here, the circumstances indicate that the documents in dispute were not prepared for the purpose of obtaining legal advice despite Mr. Grasso's protestations to the contrary. *See, e.g.,* Grasso Decl. ¶¶ 1, 4, 7 (stating that information gathered was needed to enable him to provide the Police Commissioner with legal advice). Given the questions posed by the City Council, and the statistical information prepared in response thereto, the documents prepared by the Office of Management Analysis and Planning were prepared for the purpose of responding to those inquiries. The following examples prove the point:

G.1. (a) What is the racial, ethnic and gender composition of the SCU for 1995, 1996, 1997 and 1998? Grasso Decl. Ex. B at 7. In response, the documents in entry 46 provide SCU officer demographics.

D.4. Most of the individuals stopped were young blacks and Hispanics. Does the NYPD engage in racial profiling? *Id.* at 5. In response, the documents in entries 69 and 83 offer demographic information on arrests Department-wide and by selected units including the SCU.

D.5. (d) What are the SCU's stop and frisk and arrest figures for 1998? *Id.* In response, the documents in entry 68 provide 1998 crime and arrest data by patrol borough.

D.6. (c) Please also provide, if available, the corresponding conviction information for each arrest. *Id.* In response, the documents in entry 70 provide arrests by the SCU that were deferred or declined for prosecution.

Given the purely factual nature of the documents in question and the straightforward reason for their creation, I cannot understand the good faith basis for asserting the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The [attorney-client] privilege only protects disclosure of communications, it does not protect disclosure of the underlying facts by those who communicated with the attorney."). *See also United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 163–64 (E.D.N.Y.1994) (finding documents not privileged because "all were written for some other purpose than to seek legal advice and would have been prepared whether or not the attorney was sent a copy").

## 3. Work Product Privilege

 The documents here were prepared not "because of" pending or anticipated litigation, but merely to respond to the City Council's request for information. This is evident from defendants' own motion papers which state: "The purpose of the hearing before the Commission was 'to collect information' related to police practices in New York City . . . [T]he Commission hearing was not held for the purpose of investigating claims for possible litigation." Defendants' Reply Memorandum of Law in Further Support of Their Motion for a Protective Order for Documents Covered by Attorney–Client and Work Product Privileges at 6. This request for information does not itself constitute litigation nor does it support a claim of anticipated litigation. *See Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. 500, 505 (E.D.N.Y.1986) (work product protection "does not apply to '[m]aterials assembled in ordinary course of business, or pursuant to public requirements unrelated to litigation . . .' or for other nonlitigation purposes") (quoting *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982)). The fact that this litigation was pending at the time the documents were prepared does little to support defendants' conclusory allegation that the information would not have been prepared in a similar manner but for the litigation. *See Pascuiti v. New York Yankees,* 98 Civ. 8186, 1999 WL 983882, at *4 (S.D.N.Y. Oct. 29, 1999) (evaluation that would have been conducted regardless of threatened litigation does not constitute work product).

 Furthermore, even if the documents in issue could be considered work product, they consist of purely factual infor-

mation and are therefore entitled to only the most minimal protection. *See Adlman,* 134 F.3d at 1197 (citing *Upjohn,* 449 U.S. at 399, 101 S.Ct. 677) (documents that reveal the attorney's mental processes receive special protection not accorded to factual material). This minimal protection may be overcome if plaintiffs have a "substantial need" for the material and cannot otherwise obtain it "without undue hardship." Fed.R.Civ.P. 26(b)(3). A substantial need for work product materials exists where the information sought is "essential" to the party's defense,[2] is "crucial" to the determination of whether the defendant could be held liable for the acts alleged,[3] or carries great probative value on contested issues. *See Cornelius v. Consolidated Rail Corp.,* 169 F.R.D. 250, 254 (N.D.N.Y.1996).

 Plaintiffs have demonstrated a substantial need for the documents withheld. The data compiled here was to respond to the City Council's questions concerning SCU officers' stop and frisk activity, the SCU's demographic composition, and the selection, training and supervision of its officers. Grass Decl. ¶ 5 and Ex. B. These issues are directly relevant to plaintiffs' claims which include defendants' failure to screen, recruit, train, discipline and supervise SCU officers appropriately and their encouragement of race-based stops and frisks. Because the information is directly probative on many of the issues in this case, plaintiffs have shown substantial need.

Plaintiffs have also shown that they cannot otherwise obtain the information without undue hardship. In their Memorandum of Law In Opposition to Motion for Protective Order Based Upon Attorney–Client and Work Product Privileges ("Pl.Memo"), they state that "[r]eplicating the data through other sources would be burdensome and costly." Pl. Memo at 10. And while defendants assert that the information may be derived from the recently produced Tactical Deployment Reports, plaintiffs assert that these reports are incomplete and provide limited demographic information concerning SCU arrests. *Id.* at 11. Furthermore, the sug-

gestion by defendants that the public information accessible to plaintiffs, coupled with the volumes of discovery material already produced, constitutes an adequate alternative source of information is belied by the instant motion. If the information was in fact publicly available, the motion would be not only meritless, but frivolous. *See United States Postal Serv.,* 852 F.Supp. at 167, table 1, n. 29. Although the level of hardship may not rise to that found in *Cornelius,* 169 F.R.D. at 254, where plaintiff would have been required to examine state and federal court files nationwide, it is sufficient to overcome any applicable work product privilege. Thus, even if the work product privilege is applicable, it has been overcome by plaintiffs' showing of substantial need.

## III. Conclusion

Consistent with the rulings set forth above, defendants shall produce the documents corresponding to privilege log entries 46, 68, 69, 70, and 83 forthwith. A conference to discuss the status of this case and the issues raised in Ms. Yee's letter to the Court dated May 1, 2000 is scheduled for Wednesday, May 10, 2000 at 11:30 a.m.

---

**2.** *See Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,* 184 F.R.D. 49, 55–56 (S.D.N.Y.1999).

**3.** *See Brownell v. Roadway Package Sys., Inc.,* 185 F.R.D. 19, 26 (N.D.N.Y.1999).