**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MAURICIO ALFONSO
HERNANDEZ,

Defendant-Appellant.

No. 98-4056
(D.C. No. 96-CR-275)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **BRORBY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

Defendant Mauricio Alfonso Hernandez appeals the district court's denial of his motion to suppress. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Hernandez was a passenger in a car driven by his sister when it was stopped at a checkpoint on I-70 near Richfield, Utah. Highway Patrol Trooper Denis Avery approached the car and asked the driver for her license and car registration. She produced what appeared to be a valid California driver's license and a registration certificate. The registration document matched the car and indicated the car belonged to Maria Robles. When Avery questioned the driver and Hernandez about the owner of the car, both indicated the car belonged to a friend, but neither could identify the owner and neither knew how to contact the owner.

Avery asked the driver to pull the car over to the shoulder of the road because he believed the car might be stolen. As the car was pulled over, Avery noticed a set of dirty hand prints on the car's bumper beneath the license plate. The prints were pointing up as if someone had used the bumper to pull out from underneath the car. The driver and Hernandez told Avery they were traveling to Denver, but neither could provide an address or telephone number for the people they were going to visit. Avery asked if they were carrying drugs. Both said "no" and Hernandez asked if Avery wanted to look. Avery said, "of course," and looked under the rear bumper at the point where he had seen hand prints. He noticed the screws under the bumper had recently been removed. Avery removed the screws and pulled the bottom of the bumper down, revealing six kilograms of

packaged cocaine.  Avery arrested the driver and Hernandez.

II.

Hernandez claims the cocaine should be suppressed because (1) the checkpoint was unconstitutional; (2) Avery exceeded the authorized scope of investigation at the checkpoint; and (3) Hernandez's consent to search the car was involuntary.  In reviewing a district court's denial of a motion to suppress evidence, this court accepts the factual findings of the district court unless they are clearly erroneous and views the evidence in the light most favorable to the district court's findings.  See United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997).  However, we review de novo the ultimate determination of the reasonableness of a search under the Fourth Amendment.  Id.

It is important to acknowledge at the outset that Hernandez does not have standing to challenge the search of the car.  United States v. Eylicio-Montoya, 70 F.3d 1158, 1164 (10th Cir. 1995).  However, he does have standing to challenge his own seizure.  Id. ("A passenger does not relinquish her Fourth Amendment interest in protecting herself from unlawful seizures merely because she chooses to ride in a vehicle in which she has no possessory or proprietary interest."); see also United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992).  Therefore, if we determine Hernandez was illegally seized, the evidence will be suppressed "to the extent that it was 'fruit of the poisonous tree.'"  United States v. Miller, 84

-3-

F.3d 1244, 1250 (10th Cir. 1996).

A stop of a vehicle at a fixed checkpoint (a "roadblock" stop) is a seizure within the meaning of the Fourth Amendment.    See United States v. Galindo-Gonzales , 142 F.3d 1217, 1220 (10th Cir. 1998).  However, a brief roadblock stop at a fixed checkpoint does not violate the Fourth Amendment if it is conducted reasonably.  Reasonableness, in the context of a roadblock seizure, is evaluated by weighing "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."    Brown v. Texas  , 443 U.S. 47, 51 (1979).

Hernandez claims the checkpoint where he was stopped was unconstitutional because the authorization for its use was overly broad and, thus, the seizure did not advance the public concerns supposedly served by the seizure. Noting "[o]ther courts conducting the balancing test under     Brown  have had some empirical data upon which to conduct a meaningful analysis of the effectiveness of the checkpoint in advancing the matters of public concern," Report at 16, the magistrate judge agreed with Hernandez and concluded the government had failed to establish the stop was effective in advancing its designed purposes.  The district court rejected this finding and denied Hernandez's motion to suppress. The court specifically rejected the magistrate's conclusion that the government was required to present empirical evidence to demonstrate the checkpoint at issue

-4-

advanced the particular purposes it was designed to address.

The purposes of the checkpoint were:

A. To inspect license plates, registration certificates, and driver's licenses.
B. To inspect compliance with seat belt and child restraint requirements.
C. To inquire if drivers have been drinking or are impaired by any controlled substances.
D. To detect anyone having in their possession alcohol or controlled substances.
E. To conduct exterior examination of vehicles for the required lights, turn signals, and other exterior safety devices.

Record I, Doc. 1, attach. A. All of these purposes are legitimate law enforcement rationales for conducting a checkpoint stop. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 451 (1990) (states have legitimate interest in eradicating drunken driving); Delaware v. Prouse, 440 U.S. 648, 658 (1979) ("States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed."). Moreover, the checkpoint advanced these important government interests. By stopping vehicles, the troopers were able to quickly confirm (1) vehicles had proper license plates, lights, turn signals, and other exterior safety devices; (2) motorists had valid registrations and licenses and were in compliance with seat belt and child restraint requirements; and (3) motorists were not impaired by or in possession of alcohol or other controlled substances. -The

-5-

effectiveness of the instant stop is apparent. Further, the infringement of the seizure on Hernandez's personal liberty was slight as he was only questioned a few minutes. Therefore, Hernandez's initial detention at the checkpoint was reasonable.

Hernandez argues Avery's investigation exceeded its authorized scope. During a roadblock stop, a police officer is entitled to verify a driver's license, registration, and proof of insurance to determine if the driver has a valid license and is entitled to operate the vehicle. Galindo-Gonzales, 142 F.3d at 1221. If the officer seeks to expand the investigation of a motorist beyond the purposes of the checkpoint, the officer must have "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Id. (quoting United States v. Bloom, 975 F.2d 1447, 1456 (10th Cir. 1992)). However, "[o]fficers properly investigating one kind of offense are not required to ignore suspicious circumstances suggesting the commission of other kinds of offenses." Id. at 1222; see also United States v. Massie, 65 F.3d 843, 848 (10th Cir. 1995).

When neither the driver nor Hernandez could show ownership of the car, Avery was justified in continuing to detain them to ascertain if the car was stolen. See id. (officer justified in asking additional questions at roadblock when driver could not produce registration papers). Moreover, after noticing the hand prints on the car's bumper, and considering the other suspicious circumstances present,

Avery was entitled to ask the driver and Hernandez if they were carrying drugs. Avery did not violate Hernandez's Fourth Amendment rights.

Hernandez gave Avery permission to search the car while he was detained. Hernandez contends his consent was involuntary. However, we need not consider this claim because Hernandez does not have standing to challenge the search of the car. See Martinez , 983 F.2d at 974 ("Absent standing, we need not consider either [defendant's] challenge to the initial search of the trunk or the related issues of consent.") .

The district court's order denying the motion to suppress is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge