William OTTERSON, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, et ano., Defendants.

No. 04 Civ. 6072(LAK).

United States District Court, S.D. New York.

Feb. 8, 2005.

David Milton, Moore & Goodman, LLP, New York City, for Plaintiff.

G. Michael Bellinger, Dorsey & Whitney, LLP, New York City, Ronald E. Joseph, Landman, Corsi, Vallaine & Ford, PC, New York City, for Defendants.

Colin C. Carriere, James Tatum, Washington, DC, for OIG.

## MEMORANDUM AND ORDER

KAPLAN, District Judge.

Plaintiff has brought a civil rights action against defendants National Railroad Passenger Corporation ("Amtrak"), Amtrak Police Officer R. McPartland and John Cavanaugh, alleging that they violated his constitutional rights by subjecting him to false arrest. He alleges that Officer

McPartland arrested him without cause after an incident in which he videotaped McPartland and Cavanaugh engineer a visibly drunken man into an ambulance near Pennsylvania Station. Amended Complaint ¶¶ 1, 11–12, 14–18. Plaintiff now moves to compel discovery of twenty-five documents that were generated in the course of an investigation of the incident by Amtrak's Office of Inspector General ("OIG") and which Amtrak has withheld claiming deliberative process and/or law enforcement privilege. These documents correspond to entries 1, 3, 4–10, 12–27 in defendants' privilege log. *See* Privilege Log, Attached as Ex. B. to Joseph Letter 1/18/2005.[1]

## A. Evaluation of a Privilege Claim

Under Fed.R.Civ.P. 26(b)(1), any material relevant to an action or reasonably likely to lead to the discovery of admissible evidence is discoverable if it is not privileged. The requested documents are relevant to plaintiff's case regarding his arrest as well as his contention that Amtrak maintains a policy of disregarding the constitutional rights of individuals. The only question, therefore, is whether these materials may be withheld as privileged.

■ As the plaintiff has asserted federal statutory and constitutional claims, federal common law governs the applicability of defendant's assertions of law enforcement and deliberative process privilege. FED.R.EVID. 501; *see Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y.2000). The deliberative process privilege applies only to documents that are predecisional and deliberative. *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). "A document is predecisional when it is 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Grand Cent. Partnership v. Cuomo*, 166 F.3d 473, 482 (2d Cir.1999) (quoting *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir.1991)) (in turn quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491,

44 L.Ed.2d 57 (1975)). The privilege therefore protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotations and citations omitted). The document also must be deliberative, meaning that it is "actually . . . related to the process by which policies are formulated." *Hopkins*, 929 F.2d at 84 (alteration in original) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978)).

■ The law enforcement or investigatory privilege exists to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Department of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir.1988).

These privileges are qualified, however, and must be balanced against the litigant's substantial need for information as well as the public's interest in disclosure. *See United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Borchers v. Commercial Union Assurance Co.*, 874 F.Supp. 78, 80 (S.D.N.Y.1995) (citing *United States v. Davis*, 131 F.R.D. 391, 395 (S.D.N.Y.), *recon. granted in part on other grounds*, 131 F.R.D. 427 (S.D.N.Y.1990)).

## B. Documents in Question

Pursuant to the Court's order of January 31, 2005, Amtrak has submitted the documents that it seeks to withhold under the deliberative process and/or law enforcement privileges for *in camera* review. Based on that review, the Court makes the following rulings in respect of Amtrak's claims of privilege.

### 1. Privilege Log Entry 1

■ Document 1 is authored by the Amtrak Police Department ("APD") and sets

---

1. Amtrak claims attorney-client privilege for the other two documents catalogued in the privilege log. Since plaintiff seeks the disclosure of only twenty-five documents, he presumably does not challenge defendants' assertion of the attorney-client privilege to withhold Documents 2 and 11.

forth its policies and procedures for handling a citizen complaint. In the margin are notes from Special Supervisory Agent (SSA) Michael DeJoseph of the OIG regarding his thoughts concerning the APD investigation into plaintiff's civilian complaint, including areas to be investigated. Amtrak claims that this document is privileged under the deliberative process and law enforcement privileges.

Amtrak does not indicate what agency policy decision this document supposedly predates and so the deliberative process privilege does not apply.

Amtrak's claim of law enforcement privilege is stronger, as the marginal notes perhaps suggest some directions in which the investigation could be taken. However, the notes are general and do not appear to relate to investigative techniques or reveal any OIG strategy. Accordingly, Document 1 is not privileged and shall be disclosed.

### 2. *Privilege Log Entries 3 and 10*

■ Documents 3 and 10 are memoranda reporting the receipt of documents and records by SSA DeJoseph from APD officials as part of OIG investigation. Document 3 lists the records primarily by number and title. Document 10 describes correspondence from the plaintiff in which he reported a conversation he allegedly overheard between an APD investigator and a New York City police officer at a community meeting.

Amtrak contends that the disclosure of these documents would reveal investigative steps of the OIG investigation or other investigative techniques. Joseph Letter 1/18/05, Ex. A., DeJoseph Decl. ¶ 15. It maintains further that the release of the documents could lead to retaliation against individuals cooperating with the investigation and chill the deliberative process between investigators. *Id.* ¶ 16.

The law enforcement privilege has a limited application here, as the documents do not reveal any investigative techniques or investigative strategy other than the fact that the documents were sent to OIG investigators, perhaps at their request. Document 3, however, does reveal the name of an APD in-

spector interviewed by the OIG agents. Accordingly, this portion of Document 3 is privileged.

■ Amtrak claims also that Document 10 is protected by the deliberative process privilege because it contains SSA DeJoseph's thoughts concerning the APD investigation. Amtrak does not point to a particular decision that this document predated, however, or any policy issues with which it is concerned. As noted above, the deliberative process privilege applies only "in the context of communications designed to directly contribute to important public policy." *Nat'l Congress for Puerto Rican Rights*, 194 at 95 (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 612 (C.D.Cal.1995)); *see also Morrissey v. City of New York*, 171 F.R.D. 85, 89 (S.D.N.Y.1997) (deliberative process does not apply to ordinary decisions of police department). The deliberative process privilege therefore does not apply to this document.

Accordingly, Documents 3 and 10 shall be produced, provided, however, that Amtrak may redact the name of the APD official disclosed in Document 3.

### 3. *Privilege Log Entries 4—9, 12—25*

■ Documents 4 through 9 are summaries of interviews with APD officials. Documents 12 through 25 are proposed questions for the APD officials along with the notes of their answers. Amtrak claims that these documents are governed by the law enforcement privilege. It contends that the disclosure of these documents could reveal investigative steps and techniques, the names of witness and subject those witnesses to potential retaliation. Joseph Letter 1/18/05, Ex. A. DeJoseph Decl. ¶¶ 14–15. It asserts further that disclosure could hamper future investigative efforts.

Plaintiff counters that he has a substantial need for the documents, as they go to the heart of the conduct at issue and the credibility of officer McPartland and John Cavanaugh. *See* Milton Letter 1/19/2005, at 2.

The request for disclosure of these interviews implicates the very purpose of the law enforcement privilege. Disclosure of the names of the witnesses could lead to retalia-

tion or make such witnesses less likely to cooperate with internal investigations in the future. Moreover, disclosure of specific questions asked of witnesses may reveal the investigative techniques of the OIG.

To be sure, courts often have discounted speculative harm flowing from infrequent court-ordered disclosure. *See Tuite v. Henry,* 181 F.R.D. 175, 178 (D.D.C.1998) (collecting cases), *aff'd,* 203 F.3d 53, 1999 WL 1021921 (D.C.Cir.1999). In this case, however, plaintiff has not established his substantial need for documents, which has been described as the most significant factor for disclosure. *See Davis,* 131 F.R.D. at 396. Moreover, these documents are notes of and summaries of interviews, and there is no reason that the plaintiff could not depose the witnesses and thereby obtain the same information. Accordingly, Documents 4 through 9 and 12 through 29 are privileged.

### 4. *Privilege Log Entry 26*

■ This document consists of personal information of a witness and his associates, including names, date of birth, social security numbers and arrest records. Amtrak asserts that the disclosure would invade the personal privacy of these individuals. Joseph Letter, 1/18/05, Ex. A., DeJoseph Decl. ¶ 19. Amtrak withholds this document on the basis of the law enforcement and "privacy" privileges.

The law enforcement privilege is intended, in part, to protect the privacy of individuals who are involved in an investigation or otherwise cooperate with law enforcement personnel. It is a qualified privilege, however, and must be balanced against the public's right to know and the "great weight afforded to federal law in civil rights cases against police departments." *Nat'l Congress for Puerto Rican Rights,* 194 F.R.D. at 96 (quoting *Soto,* 162 F.R.D. at 616).

Here, the balance of the interests depends intimately on the identity of the unnamed witness. Were the witness simply a cooperating individual without any other involvement in the case, disclosure of such personal information would be unwarranted. The witness to whom this document pertains, however, is John Cavanaugh, a named defendant.

His name already is public with regard to the incident in question. Moreover, although he is subject to a civil suit, the disclosure of the document will not subject him to criminal charges. Accordingly, the privacy concerns of the law enforcement privilege do not weigh against disclosure of those portions of the document relating to defendant Cavanaugh.

Amtrak contends also that this document may be withheld on the ground of privacy. There is no specific privacy privilege under Rule 26 other than the provision that permits a party or person to seek protection from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV.P. 26(c); *see also Goodman v. City of New York,* No. 03 Civ. 2497, 2004 WL 1661105 (S.D.N.Y. July 23, 2004) (finding no generic privacy privilege under the civil discovery rules). There is no showing here that the records, many of which have been gathered from public sources, would cause sufficient annoyance and embarrassment to justify not disclosing them. Document 26 therefore shall be disclosed, provided, however, that Amtrak may redact those portions that reveal personal information of persons other than Cavanaugh.

### 5. *Privilege Log Entry 27*

■ Document 27 consists of handwritten notes by SSA DeJoseph concerning his thoughts on the investigation into plaintiff's civilian complaint, specific areas to be investigated and witnesses to be interviewed. Amtrak claims that these notes are protected by the law enforcement and deliberative process privileges. It asserts that the disclosure of the document could reveal investigative steps or techniques and thereby could hamper future investigations. Joseph Letter, 1/18/05, Ex. A., DeJoseph Decl. ¶ 15.

As discussed above, the deliberative process privilege is inapplicable here. The law enforcement privilege is implicated, however, as the disclosure of the specific areas to be investigated and witnesses to be interviewed could reveal investigative techniques and strategy. Accordingly, this document is privileged.

*Conclusion*

For the foregoing reasons, Amtrak shall produce the documents, in redacted form where appropriate, that correspond to privilege log entries 1, 3, 10, and 26, on or before February 18, 2005.

SO ORDERED.